UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHARON IGARAVIDEZ GONZALEZ,

     Plaintiff,

       v.                                  No. 3:17-cv-1809(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

     Defendant.
_____X


**RULING ON PENDING MOTIONS**


     This is an administrative appeal following the denial of the plaintiff, Sharon Igaravidez

Gonzalez's, applications for Title II disability insurance benefits ("DIB") and Title XVI

supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[1]

Plaintiff now moves for an order reversing the decision of the Commissioner of the Social

Security Administration ("the Commissioner"), or in the alternative, an order remanding her case

for a rehearing. [Doc. # 20]. The Commissioner, in turn, has moved for an order affirming her

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

decision. [Doc. # 21]. After careful consideration of the arguments raised by Plaintiff, and thorough review of the administrative record, the Court affirms the Commissioner's decision.

## **LEGAL STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258. If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## BACKGROUND

### a. Facts

Plaintiff filed applications for DIB and SSI on May 6, 2014, alleging a disability onset date of November 1, 2013. Her claims were denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On September 26, 2016, a hearing was held before administrative law judge Eskunder Boyd (the "ALJ"). On December 6, 2016, the ALJ issued a decision denying Plaintiff's claims. The Appeals Council denied review of the ALJ's unfavorable decision. This action followed.

Plaintiff was thirty-three years old on the alleged disability onset date. (R. 26). She has a twelfth-grade education. (R. 45). She cannot communicate in English. (R. 45). Plaintiff last worked in 2012. (R. 51). She has past employment experience as a factor worker and assembly line worker. (R. 26).

Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 20-2]. The Court adopts this stipulation and incorporates it by reference herein.

### b. The ALJ's Decision:

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the

Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

In this case, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (R. 17). At Step Two, the ALJ found the following severe impairments: Asthma; Crohn's Disease; Post Traumatic Stress Disorder; Depressive Disorder; and Anxiety Disorder. (R. 17). At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 28). Next, the ALJ determined Plaintiff retains the following residual functional capacity[2]:

> Plaintiff can perform sedentary work except she requires a sit/stand option defined as sitting for forty-five minutes, alternate to standing position for five minutes, then resume sitting. She may never climb ladders, ropes, or scaffolds, but may occasionally balance, stop, crouch, kneel, and crawl. She should not work with exposure to temperature extremes and should avoid even moderate exposure to pulmonary irritants. She is able to perform simple, routine, repetitive tasks and is able to sustain concentration, persistence, or pace for two-hour segments with occasional interaction with coworkers and no interaction with the public. The work should involve little to no changes in duties or routines and should not require independent judgment making with no setting work duties or

---

[2] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

schedules for others, and no responsibility for the safety of others. She must
receive instructions orally or by demonstration and not in written form.

(R. 20-6). At Step Four, the ALJ found Plaintiff unable to perform any past relevant work. (R.

26). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that

there are jobs existing in significant numbers in the national economy that Plaintiff can perform.

(R. 27). Specifically, the ALJ found Plaintiff can perform the positions of visual inspector,

novelty assembler, and quality control weight tester/inspector. (R. 27). Accordingly, the ALJ

found Plaintiff not to be disabled.

## DISCUSSION

Plaintiff makes several arguments in support of her position that the ALJ's decision

should be reversed. The Court will address these points in turn.


### 1. Findings regarding Listed Impairments

Plaintiff first argues that her depressive disorder meets or equals Listing 12.04 and/or

12.06. Specifically, Plaintiff avers that she meets the paragraph B criteria for both listings

because her activities of daily living and social functioning are markedly impaired, and because

she has had repeated episodes of decompensation. The Commissioner responds that substantial

evidence supports the ALJ's findings of mild limitations in activities of daily living, moderate

limitations in social functioning, and no episodes of decompensation during the relevant period.

The burden of proof is on the Plaintiff to present evidence she satisfies the listing

requirements. *See Ruiz v. Apfel*, 26 F.Supp.2d 357, 367 (D. Conn. 1998). "For a claimant to

show that [an] impairment matches a listing, it must meet *all* of the specified medical criteria."

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Here, Plaintiff argues that her depressive disorder

meets or equals Listing 12.04 and 12.06. Both listings, 12.04 (affective disorders) and 12.06

(anxiety related disorders), contain requirements outlined under paragraphs A, B, and C.  As relevant here, Plaintiff must satisfy paragraphs A and B to meet or equal either listing.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Here, the ALJ did not make findings as to paragraph A but ruled that paragraphs B and C were not satisfied.  Plaintiff now only challenges the ALJ's paragraph B findings.  The Court therefore need only address the sufficiency of the ALJ's paragraph B analysis.

Paragraph B contains the same content for Listings 12.04 and 12.06: a claimant must show at least <u>two</u> of the following: (1) "[m]arked restriction of activities of daily living"; or (2) "[m]arked difficulties in maintaining social functioning"; or (3) [m]arked difficulties in maintaining concentration, persistence, or pace; or (4) "[r]epeated episodes of decompensation, each of extended duration."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  A restriction is "marked" when "several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  *Id.*

Plaintiff avers that her activities of daily living are markedly impaired, and that the ALJ's finding that she was only mildly limited in this area is not supported by the record.  "Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for … grooming and hygiene, using telephones and directories, and using a post office."  *Id.*   In support of his conclusion that Plaintiff had mild limitations in this functional area, the ALJ noted that Plaintiff could maintain personal care and cook, but could not perform household tasks such as laundry or cleaning.  (R. 19).  Plaintiff argues that while she can sometimes maintain self-care, she has also

groomed herself so hard that she caused her scalp to bleed, and other times has neglected self-care. She also argues that she has had difficulties using public transportation and shopping.

Additionally, Plaintiff maintains that she has marked limitations in social functioning, and that the ALJ's assessment of moderate limitations in this area is without support in the record. "Social functioning refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found Plaintiff had some restrictions interacting with others. (R. 19). Plaintiff argues that the record shows she vacillates between being afraid of others and being unable to be alone, and that she experiences episodes of anger and rage.

Finally, Plaintiff argues that she had repeated extended episodes of decompensation, and that the ALJ's conclusion that there were no episodes of decompensation during the relevant period is without support. "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. They may be shown "by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)," or may be inferred "from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." Id. Here, the ALJ noted a review of the record indicated no evidence of episodes of decompensation. (R. 19). Plaintiff argues that an opinion from her treating psychiatrist that she had repeated episodes of

decompensation supports her position.

The Court finds the ALJ's Paragraph B analysis is supported by substantial evidence. Plaintiff testified that she can dress, groom, and bathe herself. (R. 51). She also stated that she can cook and clean with help. (*Id.*). Her hearing testimony additionally indicates that while she may be uncomfortable speaking with strangers, she does not have problems getting along with others. (R. 55). Other evidence in the record shows Plaintiff was able to walk her children to the school bus and clean her house. (R. 360). Treatment notes reveal Plaintiff's speech, thoughts, and appearance were regularly within normal limits, and her insight and judgment were fair to good. *See* R. 492, 503, 510, 512, 578, 1758. In addition, there is no evidence of inpatient psychiatric treatment or psychiatric hospitalization during the relevant period. *See* R. 1753. Finally, the ALJ's findings are supported by the opinions of the state agency medical consultants. Both consultants found Plaintiff mild impaired in activities of daily living and no episodes of decompensation. (R. 99, 125). Further, the consultant at the initial level concluded that Plaintiff was only moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors, and only moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 101). The consultant at the reconsideration level similarly opined though Plaintiff could not interact appropriately with the general public, she was able to relate adequately with supervisors and co-workers. (R. 129). In all substantial evidence supports the ALJ's findings at Step Three.

### 2. Evaluation of Opinion Evidence

Plaintiff next challenges the weight given to the medical opinions. The opinion evidence of record is as follows:

On July 31, 2014, Dr. Andres Barkil-Oteo and therapist Maritza Melendez-Williams, LCSW, who had seen Plaintiff weekly since 2008, completed a medical source statement. (R. 435). They diagnosed Plaintiff with major depression and posttraumatic stress disorder. (*Id.*). They opined that Plaintiff's orientation and memory are intact and that she generally has good attention and concentration except during times of acute exacerbation of symptoms. (*Id.*). They listed her thought content as containing para psychotic symptoms including hearing her name being called, hyper vigilance, and the fear that someone was following her or watching her. (R. 436). With respect to functional abilities, Dr. Barkil-Oteo and Ms. Melendez-Williams found Plaintiff has a very serious problem handling frustration appropriately; serious problems using good judgment regarding safety and dangerous circumstances; using appropriate coping skills to meet ordinary demands of a work environment; interacting appropriately with others in a work environment; and in asking questions or requesting assistance. (R. 436-37). They noted obvious problems caring for physical needs; respecting/responding appropriately to others in authority; focusing long enough to finish assigned simple activities or tasks; performing basic work activities at a reasonable pace and finishing on time; and performing work activity on a sustained basis. (R. 436-37). They assessed a slight problem in getting along with others without distracting them or exhibiting behavioral extremes, and no problems in taking care personal hygiene; carrying out single step instructions; carrying out multi-step instructions; and changing from one simple task to another. (R. 436-37). The ALJ gave this opinion partial weight; the ALJ accepted that Plaintiff has some problems interacting with others, but did not credit the opinion with respect to problems using judgment and maintaining attention and focus. (R. 25).

On December 29, 2015, Dr. Barkil-Oteo and Ms. Melendez-Williams completed a second medical source statement. (R. 1768). They identified Plaintiff's symptoms as including appetite

disturbance, sleep disturbance, mood disturbance, emotional lability, delusions or hallucinations, and social withdrawal or isolation. (*Id.*). In addition, they noted recurrent panic attacks, anhedonia, paranoia, feelings of guilt and worthlessness, difficulty thinking or concentrating, obsessive or compulsive actions, intrusive recollections of dramatic experiences, persistent irrational fears, and hostility and irritability. (R. 1769). They wrote that Plaintiff is not a malingerer and her impairments are reasonably consistent with her symptoms and functional limitations. (*Id.*). They listed Plaintiff's prognosis as poor because she has had limited response to her current medication regimen. (*Id.*). They additionally noted that Plaintiff's poorly managed psychiatric symptoms exacerbate her ongoing symptoms related to Crohn's disease. (*Id.*). In terms of functional abilities, Dr. Barkil-Oteo and Ms. Melendez-Williams assessed Plaintiff as 20% limited in her ability to perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and travel to unfamiliar places or use public transportation. (R. 1770). They rated her as 15% limited in the ability to understand and remember detailed instructions; carry out detailed instructions; and maintain attention and concentration for extended periods. (*Id.*). Further, they assessed a 5% limitation in Plaintiff's ability to remember locations and work-like procedures; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; interact appropriately with the general public; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others. (*Id.*). Dr. Barkil-Oteo and Ms. Melendez-Williams assessed no limitations in Plaintiff's ability to understand and remember short and simple

instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; ask simple questions or request assistance; accept instructions and respond appropriately to criticism; get along with coworkers without exhibiting behavioral extremes; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id.*). Finally, Dr. Barkil-Oteo and Ms. Melendez-Williams opined that Plaintiff has marked difficulties in maintaining social functioning and repeated episodes of decompensation, each of extended duration, and that she would be absent from work more than three times per month. (R. 1771). The ALJ found that the 20% limitation fails to recognize Plaintiff's ability to perform work in the past and is inconsistent with mental status examinations showing sustained attention and the ability to have insightful conversations about avoiding stress triggers. (R. 25).

On July 28, 2015, Dr. Deborah Proctor and APRN Nana Bernardo, who saw Plaintiff monthly for Crohn's disease, completed a medical source statement. (R. 1631). They identified Plaintiff's symptoms as chronic diarrhea, abdominal pain, nausea, fatigue, and joint pain, and listed her prognosis as guarded. (*Id.*). They opined that Plaintiff's depression and anxiety affected her physical condition. (R. 1632). Dr. Proctor and Ms. Bernardo found that Plaintiff can walk three city blocks, sit for more than two hours at one time, stand for one hour, stand/walk less than two hours total in a work day, and sit two hours total in a work day. (*Id.*). They said Plaintiff needs to shift positions at will, needs access to a restroom, and needs to take unscheduled breaks of fifteen minutes every two to three hours with less than one-minute notice for the restroom. (R. 1632-33). Dr. Proctor and Ms. Bernardo found Plaintiff can frequently lift less than ten pounds, occasionally lift ten pounds, and rarely lift twenty pounds; frequently stoop and twist, occasionally crouch, squat, climb stairs, and rarely climb ladders. (R. 1633). They

assessed Plaintiff would be off task 20% of the workday, but that she is capable of low stress work.  (*Id.*).   They stated Plaintiff has good days and bad days and would be absent from work four times per month.  (*Id.*).  The ALJ gave this opinion partial weight, reasoning that the findings for depression, anxiety, and concentration were beyond the scope of the treatment relationship, and the finding for limited sitting and standing is not supported by the record.  (R. 24).  The ALJ did accept that Plaintiff would need a bathroom break every two to three hours.  (*Id.*).

On December 1, 2015, Dr. Lauren Cohn, a pulmonologist who saw Plaintiff every six months for severe asthma, completed a medical source statement.  (R. 1635).  She identified Plaintiff's symptoms as shortness of breath, chest tightness, wheezing, and acute asthma.  (*Id.*). Precipitating factors for Plaintiff's asthma attacks include allergens, exercise, irritants, emotional upset/stress, cold air, changes in weather, and upper respiratory infections.  (*Id.*).  Dr. Cohn characterized Plaintiff's asthma attacks as frequent and severe, and occurring numerous times annually causing her to be incapacitated for four to seven days.  (*Id.*).  She wrote that emotional factors contribute to Plaintiff's symptoms.  (*Id.*).  Dr. Cohn listed a good prognosis because Plaintiff has improved since she stopped working in a dusty environment.  (R. 1636).  She found Plaintiff can rarely lift ten pounds or less and can never lift more; can rarely twist, stoop, crouch, squat, climb stairs; and can never climb ladders.  (R. 1637).  Dr. Cohn opined Plaintiff should avoid all exposure to extreme temperatures, humidity, wetness, cigarette smoke, fumes, soldering fluxes, solvents, dust, fumes, odors, gases and chemicals.  (*Id.*).  She concluded that Plaintiff is capable of low stress work.  (R. 1638).  The ALJ assigned partial weight to this opinion.  (R. 25). Specifically, the ALJ credited the finding that Plaintiff's symptoms improved since she stopped working in a dusty environment.  (*Id.*).

Dr. Cohn completed a second medical source statement on January 28, 2016. (R. 1803). She identified Plaintiff's symptoms as shortness of breath, chest tightness, wheezing, acute asthma episodes, and coughing. (*Id.*). She said asthma attacks are precipitated by upper respiratory infections, allergens, exercise, irritants, cold air, and changes in weather. (*Id.*). Dr. Cohn noted that Plaintiff has not had any severe exacerbations in the past two years, but when she does each attack lasts over a week. (*Id.*) She found that Plaintiff can sit for more than two hours at a time and can walk one to two city blocks at a time. (R. 1804). Dr. Cohn noted that "asthma is a variable disease so the frequency of her needs will change." (*Id.*). She stated Plaintiff could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift more than ten pounds; and can rarely twist, stoop, crouch, squat, climb ladders, and stairs. (R. 1805). Plaintiff should avoid all exposure to extreme cold, extreme heat, humidity and wetness, cigarette smoke, perfumes, soldering fluxes, solvents cleaners, fumes, odors, gases, dusts, and chemicals. (*Id.*). She opined that Plaintiff would be off task 5% to 10% of the time if the work environment was good, and would be absent one to two days per month. (R. 1805-06). The ALJ gave this opinion little weight, finding that it was inconsistent with treatment notes. (R. 25).

On January 22, 2016, Dr. James Seely, who had treated Plaintiff since 2008, completed a medical source statement. (R. 1799). He listed Plaintiff's symptoms as including frequent severe asthma attacks, fatigue, abdominal pain, and diarrhea. (*Id.*). He opined that emotional factors contribute to the severity of her symptoms. (*Id.*). Dr. Seeley found Plaintiff can walk up to one city block, can sit for fifteen to twenty minutes at a time, and can stand for fifteen to twenty minutes at a time. (R. 1800). In an eight-hour day, she can sit and stand/walk less than two hours and needs to be able to change positions at will. (*Id.*). He stated Plaintiff needs unscheduled breaks during a work day, these breaks would be unpredictable and indefinite, and

are needed due to chronic fatigue, pain, and adverse side effects of medication including diarrhea or difficulty breathing. (*Id.*). Dr. Seeley found Plaintiff can rarely lift less than ten pounds and can never lift more than that; she can occasionally twist, stoop, crouch, squat, and climb stairs, but can never climb ladders. (R. 1801). He opined that Plaintiff would be off task more than 25% of the workday and is incapable of even low stress work. (R. 1802). He noted that "when sick she cannot work and has to deal with her complex illnesses." (*Id.*). He concluded that Plaintiff has good days and bad days and would be absent more than four days per month. (*Id.*). The ALJ gave this opinion little weight, finding it was not supported by, and inconsistent with, the record. (R. 24).

At the initial level, state agency reviewer Robert G. Sutton, PhD, opined that Plaintiff is moderately limited in the ability to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 100-01). Dr. Sutton noted that Plaintiff has occasional problems with concentration, distractibility, and pace, and can follow and complete simple instructions for up to two hours at a time throughout an eight-hour workday. (R. 101). He found Plaintiff moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*). He found Plaintiff moderately limited in the ability to respond appropriately to changes in the work setting. (*Id.*). The ALJ accepted the opinion that Plaintiff can perform short, simple tasks with limited social interaction. (R. 24).

At the reconsideration level, state agency reviewer John Warner, Ed.D, opined that Plaintiff is markedly limited in her ability to carry out detailed instructions, but not significantly limited in her ability to carry out very short and simple instructions. (R. 128). He further opined that she is moderately limited in the ability to maintain attention and concentration for extended periods, in the ability to work in coordination with or in proximity to others without being distracted by them, in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform a without an unreasonable number and length of breaks. (R. 128-29). He found that Plaintiff is markedly limited in the ability to interact appropriately with the general public, and is moderately limited in the ability to accept instructions and respond appropriately to criticism supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and to respond appropriately to changes in the work setting. (R. 129). He noted that Plaintiff was able to meet the basic demands associated with relating adequately with supervisors and co-workers but was unable to interact appropriately with the general public. (*Id.*). The ALJ accepted the opinion that Plaintiff can perform unskilled work and can sustain concentration, persistence, or pace to complete such tasks. (R. 24).

Plaintiff makes several claims of error in relation to the ALJ's evaluation of the opinion evidence. First, she argues that the ALJ erred in evaluating Dr. Barkil-Oteo's opinion because he focused only on evidence that undermined the opinion and disregarded evidence to the contrary, and that discounting the 20% limitation was error because Plaintiff's past ability to work is not related to her mental status since the onset of her disability symptoms. Plaintiff also asserts that the ALJ should have assigned controlling weight to the opinions of Dr. Proctor, and it was error

for him to discount her opinion as to Plaintiff's psychiatric symptoms. She additionally posits that Dr. Cohn's opinion should have been given controlling weight because it is supported by years of evidence of Plaintiff's asthma flares, and Dr. Cohn is a treating specialist. Finally, Plaintiff claims Dr. Seeley's opinion is entitled to controlling weight because he treated Plaintiff since 2008, and his opinion is consistent with the other opinion evidence. The Commissioner responds that the ALJ properly weighed the opinion evidence, and the assessed RFC is supported by substantial evidence.

In making an RFC finding, the ALJ must analyze the medical opinions of record. The treating physician rule provides that a treating source's opinion on the nature or severity of a claimant's impairments will be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). When a treating physician's opinion is not deemed controlling, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). These factors include "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 416.927(c)(2). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess,* 537 F.3d at 129. An ALJ is not required to "slavish[ly] recite[]each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

It is well-established that the opinion of a non-examining source can override the opinion of a treating source when it is supported by the medical evidence. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations … permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record."); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (an ALJ can find a non-examining source's opinion "more reliable" than an opinion of a treating source).

Further, an ALJ's RFC finding need not "perfectly correspond with" any medical source opinion. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Rather, an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.*

The Court finds that the ALJ's decision to discount the opinions of the treating physicians is not in error in this case. While the record contains some conflicting evidence, the ALJ was entitled to resolve it in the manner in which he did. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (explaining that when the record contains evidence pointing both ways, the ALJ's factual findings are conclusive as long as they are supported by substantial evidence).

In contrast to the opinions of treatment providers as to Plaintiff's inability to stay on-task, treatment notes consistently fail to note any deficits in Plaintiff's ability to maintain attention and concentration. *See* R. 441, 446, 450, 457, 458, 465, 492, 510, 511, 512, 580. Instead, the record is replete with treatment notes indicating good judgment and insight. *See* R. 441, 446, 450, 457, 465, 492, 510, 511, 512, 580; *see also* R. 446, 451, 451 (judgment fair and insight good to fair). Further, Plaintiff was recurrently observed to have normal thought process at therapy appointments. *See* R. 445, 446, 450, 451, 457, 458, 465, 492, 510, 511, 512, 578. In addition, Dr. Barkil-Oteo's opinion asserts that Plaintiff had "generally good attention and concentration,

except during times of acute exacerbation of symptoms." (R. 435). Given the evidence contradicting a finding that Plaintiff would be off-task 20-25% of a work day, the Court cannot say that the ALJ's decision to discredit the treating source opinions in this regard is in error.

In addition, the ALJ could properly conclude that Dr. Barkil-Oteo's opinions were not fully supported by treatment notes. The ALJ was entitled to assign weight to the portion of the opinion that was consistent with the evidence of record (that Plaintiff had some problems interacting with others) and to discount the portions of the opinion inconsistent with the overall record.

Likewise, since the record does not support Dr. Chon's opinion in full, the ALJ was not required to give it controlling weight. Dr. Cohn stated Plaintiff had asthma attacks numerous times per year, each leaving her incapacitated for four to seven days. Yet, records reveal Plaintiff had no recent hospitalizations or emergency room visits for asthma attacks or respiratory problems. (R. 468). In addition, treatment notes indicate the severity of asthma attacks improved once Plaintiff stopped working in a dusty environment. (R. 443, 469, 486). The medical evidence also establishes that Plaintiff's asthma responded well to medication. (R. 501). The ALJ was entitled to consider this evidence and find that it did not support Dr. Chon's opinion in full.

Moreover, the ALJ was entitled to find that Dr. Proctor's opinions as to Plaintiff's psychiatric symptoms was beyond the scope of treatment. The regulations expressly provide the ALJ should consider the treating source's specialty (Dr. Proctor is a gastroenterologist) and the scope of the treating relationship (treating Plaintiff for Chron's disease). *See Selian*, 708 F.3d at 418.

Finally, the ALJ's evaluation of Dr. Seeley's opinion, for the reasons already discussed, was not in error. The limitations to which Dr. Seeley opines are not supported by the evidence as a whole such that the ALJ was required to give the opinion controlling weight.

### 3. Adequacy of the RFC

Finally, Plaintiff argues that the RFC is insufficient because the ALJ should have limited Plaintiff to significant off-task behavior and absenteeism and should have limited Plaintiff to no exposure to pulmonary irritants.

Plaintiff bears the burden of proving she cannot perform the assessed RFC. *See* 20 C.F.R. §§ 404.1545; 416.945. She is unable to do that here, and the assessed RFC is supported by substantial evidence. *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

With respect to time off-task, the Second Circuit recently held that an ALJ could reject the opinions of treating physicians as to a claimant's time off-task and absenteeism when those opinions were "critically flawed" and "inconsistent with other substantial evidence." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Here, as in *Smith*, the ALJ pointed to ample evidence contradicting the opinions that Plaintiff would not be able to sustain concentration and pace and maintain regular attendance. When there is conflicting evidence in the record, the court should defer to the ALJ's resolution of it "and accept the weight assigned to the inconsistent opinions as a proper exercise of the ALJ's discretion." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

Likewise, Plaintiff has not shown she needs to be limited to no exposure to pulmonary irritant. The vocational expert testified that the jobs Plaintiff could perform have "less than the occasional exposure to dust and pulmonary irritants," and there were no jobs with *absolutely no* exposure to dust. The ALJ's decision to rely on this testimony is consistent with the medical evidence. The record shows that Plaintiff can spend time in settings that are not clinically-controlled, dust-free environments, such as medical offices, movie theatres, and church. And, as discussed above, the record indicates Plaintiff's symptoms improve when she is not in a dusty environment such as a factory (as opposed to being in a clinically-controlled, dust-free setting).

### Conclusion

In all, when the Court applies, as it must, the substantial evidence standard, it is required to affirm the decision of the Commissioner in this case. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (internal quotations marks omitted). This means that when the medical evidence "is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

Therefore, a thorough review of the record and consideration of all of the arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm and denies Plaintiff's Motion to Reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals

from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).  The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this __18th__ day of December, 2018, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge